

## NUMBER
## 13-10-00525-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**HECTOR CAVAZOS JR.,**                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                           **Appellee.**

## On appeal from the 148th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

A jury convicted appellant, Hector Cavazos Jr., of two counts of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a), (e) (West Supp. 2010). The trial court found the State's enhancement allegations "true," assessed punishment at sixty years' imprisonment on each count, and ordered the

sentences to be served concurrently. *See id.* § 12.42(c)(1) (West Supp. 2010). By six issues, appellant contends: (1) the evidence is insufficient to support his conviction because the child victim did not specifically identify him; (2) the trial court erred in admitting certain evidence (issues two, three and four); (3) the prosecutor engaged in prosecutorial misconduct (issue five); and (4) the trial court erred in denying his motion for new trial alleging ineffective assistance of counsel (issue six). We affirm.

## I.  BACKGROUND

The State presented the testimony of five witnesses, including the testimony of: (1) Texas Ranger Roberto D. Garza Jr., who investigated the case; (2) C.T., the victim's mother; (3) A.L., the child victim; (4) Leigh Motes, A.L.'s therapist; and (5) Ricardo Jimenez, interviewer at the Children's Advocacy Center of the Coastal Bend, who interviewed A.L.

A.L. was thirteen years old at the time of trial. She testified that when she was five and six years old, appellant lived with her and C.T. On at least five occasions, while C.T. was at work, appellant tied A.L. to the bed and raped her. C.T., who was then pregnant with appellant's child, worked as a telemarketer and frequently left A.L. at home with appellant.[1] A.L. testified that the first assault occurred after she had been playing outside and went inside to use the restroom. Appellant slapped her and locked her in her room. Appellant refused to unlock the door and A.L. urinated on herself. Eventually, appellant unlocked the door, took A.L. into the bedroom he shared with C.T., removed A.L.'s clothes, and tied her to the bed with a rope he retrieved from the closet. Appellant removed his clothes and put his penis in A.L.'s vagina. A.L. screamed

---

[1] Appellant is not A.L.'s biological father. A.L. testified that she has had very little contact with her biological father.

because it was painful. Appellant put his mouth on her vagina. He covered her mouth to prevent her from screaming and penetrated her vagina with his penis a second time. Appellant threatened A.L. and told her not to tell anyone about the incident. Appellant untied A.L. and told her to take a shower. When C.T. came home, she found A.L. with wet hair and a slap mark on her face. A.L. told C.T. that appellant slapped her because she had wet herself.

Approximately six months later, Child Protective Services (CPS) removed A.L. from the home. For a while, A.L. lived with her paternal grandmother. A.L. told her grandmother about the assaults, hoping that her grandmother would relate the events to C.T. A.L. did not tell C.T. about the assaults because C.T. was doing drugs. Instead of telling C.T., however, A.L.'s grandmother reported the assaults to CPS and the police. A.L. testified that she did not want the police involved because she was afraid appellant would harm C.T. and her infant half-brother. In April 2004, A.L. was taken to a doctor. A.L. told the doctor that she had been assaulted by appellant's nephew, "Junior." A.L. was taken to Driscoll Children's Hospital, but she did not report the assault because she was "still scared." Thereafter, A.L. was placed in several foster homes.

In 2007, A.L. was returned to C.T. Two years later, in November 2009, when appellant was no longer living with C.T., A.L. finally told C.T. about the 2003 assaults. Sometime later, in response to pressure from C.T., A.L. recanted her allegations against appellant and claimed that she had been assaulted by her biological father, not appellant. C.T. reported this information to Ranger Garza. Ranger Garza testified that he reviewed A.L.'s "compelling statement" taken at the Children's Advocacy Center, in which she alleged that appellant had assaulted her. Ranger Garza said he "knew

3

something was wrong" and re-interviewed C.T. C.T. admitted that she had pressured A.L. into recanting. A.L. testified that she had lied when she said that "Junior" and her father assaulted her because she did not "want anybody to get hurt." She testified that appellant was the only person who had ever touched her in a sexual way.

## II. SUFFICIENCY OF EVIDENCE IDENTIFYING APPELLANT AS PERPETRATOR

### A. Standard of Review

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary sufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v.*

*State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

### B. DISCUSSION

Appellant challenges only the identity element of the offense, arguing that during A.L.'s testimony, she did not formally identify him and used "unclear" pronouns such as "he" and "his" instead of referring to appellant by name. Appellant also argues that A.L.'s use of "unclear pronouns" combined with A.L.'s "prior recantations and false outcries" render the evidence insufficient to identify appellant. We disagree.

A.L.'s testimony regarding the first time she was sexually assaulted was in response to the prosecutor's question, "[c]an you, please, tell the jury about the first time that Hector ever touched you." In the course of questioning A.L. about the incident, the prosecutor asked, "[a]nd so, you go to—towards the hallway to the bathroom,

5

where's the first time you see the defendant, Hector?" Although A.L. subsequently referred to appellant as "he," we conclude that it is clear that A.L. was referring to appellant. A.L. testified that she finally told C.T. about the assaults when she felt a little "safe" and believed that appellant was far away. In questioning A.L. about her recantation and allegation that A.L.'s father committed the assault, the prosecutor asked, "[h]ow long did it take you to tell your mom that wasn't true, that it was Hector?" A.L. responded, "[t]hree days after." When asked, "has anybody other than Hector ever touched you in that way, in a sexual way?" A.L. responded, "[n]o, ma'am." On cross-examination, defense counsel asked A.L., "[a]nd then, it was about two years later [after returning to C.T. in 2007] that you told [C.T.] that Hector did this to you." A.L. responded, "[y]es."

During his testimony, Ranger Garza identified appellant as "Hector Cavazos." C.T. also specifically identified appellant as "Hector Cavazos." Leigh Motes, A.L.'s therapist, testified that A.L. identified appellant as her abuser. Viewing the evidence in the light most favorable to the jury's verdict, we find the evidence was sufficient for a rational jury to have found that appellant was the perpetrator of the assaults. *See Brooks*, 323 S.W.3d at 898–99. We overrule appellant's first issue.

### III. ADMISSION OF EVIDENCE

#### A. Extraneous Offense Evidence

By his second issue, appellant contends the trial court erred in permitting C.T. to testify that she and appellant frequently used drugs in A.L.'s presence when A.L. was five and six years old. Appellant contends that this "extraneous offense" should not

have been admitted, and that he was harmed by the admission of this "highly prejudicial information."

During the State's direct examination of C.T., the following exchange occurred:

Q [Prosecutor]:     Was there drug use in your household?

A [C.T.]:             Yes.

Q:                     And was it frequent?

[Defense counsel]:  Object to the relevance of this, Your Honor.

[the Court]:          Overruled.

Appellant also asserts that his relevance objection at trial preserved his argument on appeal that the evidence was inadmissible under Rule 404(b).

### 1.  Standard of Review and Applicable Law[2]

We review a trial court's decision to admit evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006).  A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).  If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision.  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).  Furthermore, improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial.  *See Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010) (noting that any preserved error with respect to admission of complained-of evidence was harmless in light of "very similar" evidence admitted without objection); *Prieto v. State*, 337 S.W.3d 918, 922 (Tex. App.—Amarillo 2011, no pet) (citing *Coble v. State*, 330 S.W.3d 253, 282 (Tex.

---

[2] The standard of review applies to appellant's second, third, and fourth issues.

7

Crim. App. 2010)). "[A]ppellate arguments must correspond with the objection at trial." *See Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994).

### 2. Discussion

We disagree with appellant's assertion that his relevance objection preserved his objection under Rule 404(b). *See Camacho v. State,* 864 S.W.2d 524 (Tex. Crim. App. 1993) (noting that hearsay and relevancy trial objections did not preserve appellate claim based on extraneous offense under Rule 404(b)).

Even if appellant's relevancy objection had preserved his Rule 404(b) objection, we conclude that appellant failed to preserve any issue because his objection was untimely. "A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008). "If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited." *Id.* Appellant's objection to C.T.'s testimony was untimely because it was made after the question about drug use was asked and answered. We overrule appellant's second issue.

### B. Opinion Testimony

By his third issue, appellant contends that the trial court erred in admitting allegedly improper opinion testimony by C.T. C.T testified that at some point after A.L. told her about the assaults, she took A.L. to visit appellant because she "wanted to see [appellant's] reaction." The following exchange occurred:

Q [Prosecutor]:          Tell me what you saw.

A [C.T.]: I saw [appellant] look at her up and down like she was an adult, [and] say, "Wow, [A.L.], you've gotten big."

Q: And when you say, "like she was an adult," what do you mean by that?

A: Like, he looked at her like she was a woman on the street, waiting to—

[Defense Counsel]: Object to speculation, Your Honor.

[Prosecutor]: Think that—

[the Court]: The objection's overruled.

[Prosecutor]: Thank you.

Q [Prosecutor]: Go ahead.

A [C.T.]: Waiting to be, what you wanna call, "screwed," "laid."

Q: And that's the way he looked at her.

A: Yes.

Q: How did she look at him?

A. Scared. Head down, like she always did.

Q: And did you get what you wanted out of that visit?

A: Yes.

Q: And when you left from that visit, what did you think?

A: I knew that he had really did [sic] what she had told me he had did.

9

Appellant cites Texas Rule of Evidence 701[3] and *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997), in arguing that C.T. offered her opinion regarding appellant's mental state, but did not "establish that her opinion [was] based on her rational perception." The State argues that appellant failed to preserve any issue for review because his speculation objection at trial did not comport with his Rule 701 objection on appeal.

We need not decide whether appellant's "speculation" objection preserved his Rule 701 objection, however, because even if we were to assume *arguendo* that the trial court erred in permitting C.T.'s testimony, admission of this testimony would be harmless. Texas Rule of Appellate Procedure 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." *See* TEX. R. APP. P. 44.2(b). "We have determined that substantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000)). Here, appellant objected to C.T.'s description and characterization of how appellant looked at A.L. A few moments later, C.T. testified, without objection, that after the visit, she believed A.L.'s allegations. The jury heard A.L.'s testimony describing the assaults and was free to judge the credibility

---

[3] Texas Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

TEX. R. EVID. 701.

10

of the witnesses. *See Anderson*, 322 S.W.3d at 405. We conclude that C.T.'s testimony describing how appellant looked at A.L. had little, if any, effect on how the jury judged the credibility of the witnesses and the weight to be given to their testimony. *See id.* Under these circumstances, we have a fair assurance that the evidence in question did not influence the jury or had but slight effect. *See Solomon*, 49 S.W.3d at 365. We overrule appellant's third issue.

### C. Testimony Regarding A.L.'s Truthfulness

By his fourth issue, appellant contends that the trial court erred in admitting testimony by Motes, A.L.'s therapist, regarding A.L.'s truthfulness. Appellant refers to the following exchange:

Q [Prosecutor]: Have you, uh, in any of the time you've been treating her, have you ever, uh, felt that she was disassociating or creating stories with regard to the assault itself?

A [Motes]: No. No. Um, no, I haven't.

[Defense counsel]: Your Honor, I'd object to this line of questioning, in that, she—she's trying to invade the juries [sic] province, that she's—I don't think it's proper to ask do you believe the witness is telling the truth or not. I don't think that's a proper question of this witness and I would object. That's the jury's job.

The trial court overruled the objection. The State argues that appellant failed to preserve the issue because his objection came after the question was asked and answered. We agree with the State. *See Luna*, 268 S.W.3d at 604 ("If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited."). We overrule appellant's fourth issue.

11

## IV. PROSECUTORIAL MISCONDUCT

By his fifth issue, appellant complains about three alleged instances of prosecutorial misconduct: (1) that the State improperly elicited testimony from Ranger Garza that A.L. was "very truthful" in her behavior; (2) that the State improperly elicited testimony from Motes that A.L.'s behavior and symptoms were consistent with sexual abuse; and (3) that in closing argument, the State misstated the law regarding the meaning of "reasonable doubt."

As the State notes, appellant did not object to any of these alleged instances of prosecutorial misconduct. Therefore, nothing is preserved for our review. *See Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (noting that a defendant's failure to object to a jury argument forfeits his right to complain about the argument on appeal); *Watkins v. State*, 333 S.W,3d 771, 780 (Tex. App.—Waco 2011, pet. ref'd) ("A timely objection regarding prosecutorial misconduct is necessary to preserve error for purposes of appeal."). We overrule appellant's fifth issue.

## V. MOTION FOR NEW TRIAL ALLEGING INEFFECTIVE ASSISTANCE

By his sixth issue, appellant contends the trial court erred in overruling his motion for new trial alleging that his trial counsel was ineffective. The State responds that appellant failed to preserve any issue because he failed to present his motion for new trial. We agree with the State. The record does not reflect that appellant presented his motion. *See Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) (noting that a reviewing court may not grant a new trial if the motion for new trial was not presented or ruled upon by the trial court). Because appellant failed to present his motion for new

12

trial, *see* TEX. R. APP. P. 21.6, he has waived his claim that the trial court abused its discretion by denying his motion for new trial. We overrule appellant's sixth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
29th day of December, 2011.

13