

NUMBER 13-11-00730-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CARL EDWARD SHINER A/K/A**                               **Appellant,**
**CARL ROBERT SHINER,**

**v.**

**THE STATE OF TEXAS,**                                         **Appellee.**

---

## On appeal from the 377th District Court
## of Victoria County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Vela
### Memorandum Opinion by Justice Garza

A jury convicted appellant, Carl Edward Shiner a/k/a Carl Robert Shiner, of arson, a first-degree felony offense, *see* TEX. PENAL CODE ANN. § 28.02 (a)(2)(A), (d)(2) (West 2011), enhanced by prior convictions under the habitual felony-offender statute, *see id.* § 12.42 (d) (West Supp. 2011), and sentenced him to ninety-nine years' imprisonment. By a single issue, appellant challenges the sufficiency of the evidence

that he had the required intent to commit arson. We affirm.

## I. Background

The following testimony was provided by the State's witnesses at trial. Appellant presented no witnesses.

### A. Lou Brooks

Lou Brooks testified that she and her husband, Troy Brooks, perform part-time security work at apartments located in Bloomington, Texas. Appellant was a resident in an apartment complex where Lou and Troy performed security duties.

On the afternoon of December 22, 2010, Lou and Troy first encountered appellant when he began chasing their vehicle, armed with crutches and a two-by-four. Later that afternoon, Lou and Troy responded to complaints that appellant was beating on his neighbors' doors. Appellant had barricaded the bathroom in his apartment shut and informed Lou and Troy that someone was in his bathroom. Lou and Troy checked the bathroom and found no one inside. Later, in response to another call, Lou and Troy found appellant tearing at the outside wall of the apartment; appellant said that someone was in his wall. Appellant said that his wife—who no longer lived in the apartment—had been in his apartment and had run into a neighboring apartment. Lou and Troy checked appellant's apartment and found no one; they also checked the neighboring apartment and found no one. Approximately twenty minutes later, Lou and Troy noticed smoke coming from appellant's apartment. Troy went inside the apartment and extinguished the fire with water, while Lou and Hilda Molina, the apartment manager, talked with appellant outside. Lou said that appellant was "jittery" and was "talking out of his head." Appellant's belongings were removed from the apartment to assess the damage. According to Lou, the fire started in a closet that was piled waist-

2

high with clothing and shoes. The fire damage was limited to appellant's apartment, which was located in a building with two other occupied units.

### B. Troy Brooks

Troy provided similar testimony regarding the incidents with appellant on December 22, 2010. Troy stated that earlier in the day, appellant had pulled siding off the walls of the apartment complex in an attempt to get to people he believed were inside the walls. Troy described how appellant chased him and Lou with a two-by-four. Later that evening, Lou and Troy responded to appellant's complaint that someone had stolen something from his apartment and was hiding in the next-door apartment. No one was in the next-door apartment. Troy noticed smoke coming from appellant's apartment, identified the source as a pile of burning clothing, and extinguished the fire with water. The fire department arrived shortly thereafter. Troy stated that appellant's behavior had been reported to the sheriff's department on several prior occasions because they knew "something was wrong"; however, the department's response was that it was unable to take any action against appellant unless he harmed someone.

### C. Clara Escalante

Clara Escalante testified that she knows appellant because he used to live in the apartment complex near Escalante's home. On the day of the fire, Escalante said appellant had come by her home and asked for money to buy beer and cigarettes. When Escalante and her husband refused, appellant became very angry and threatened that he was going to set fire to everyone's house. Escalante was afraid because her husband is disabled due to a stroke. Escalante reported to the fire marshal that appellant told her he had started the fire.

On cross-examination, Escalante stated she was at appellant's apartment when

he started the fire. Appellant started the fire using a "hot plate" and a towel. Escalante reported to the fire marshal that she saw appellant outside his apartment with a burning towel, but did not report the details of how appellant started the fire because she was afraid of him.

### D. Hilda Molina

Hilda Molina testified that at the time of the fire, she was an apartment manager at the complex. Molina stated that Lou came to her office and reported that some tenants were complaining about appellant banging on the walls. When Lou and Molina reached appellant's apartment, they noticed that the front door was open and smoke was coming out. Appellant came to the door and said that "a guy" tried to set his apartment on fire and then ran into the apartment next door. Lou opened the next-door apartment; no one was there. The source of the fire in appellant's apartment was a pile of clothing burning in a closet. According to Molina, the apartment had to be repainted and the appliances replaced. On cross-examination, Molina testified that she did not see Escalante at the apartment.

### E. Roger Hempel

Roger Hempel, a firefighter and batallion chief with the Victoria Fire Department, testified that he and approximately eleven other fire department personnel responded to the reported fire at the apartment complex. The fire was already extinguished when they arrived. The firefighters identified the pile of smoldering clothing as the source of the fire. The fire crew removed the charred clothing from the apartment.

### F. Ron Prey

Ron Prey, the Victoria County Fire Marshal and Fire Chief, testified that he was dispatched to the fire at appellant's apartment. By the time Chief Prey arrived, the fire

4

had been extinguished. He conferred with Chief Hempel and several witnesses. Chief Prey inspected the closet area after most of the charred clothing had been removed. He also spoke to appellant at the scene regarding the fire. Appellant told Chief Prey multiple stories regarding the fire. Initially, appellant said his brother's girlfriend had started the fire and ran away. He later said that two women set the fire and ran away. Still later, appellant said that he may have accidentally started the fire himself. In inspecting the apartment, Chief Prey did not find any evidence that the fire started accidentally. Appellant told Chief Prey that he may have accidentally dropped a cigarette in the closet. Chief Prey "felt something was wrong" because appellant's "story was not what [he] was seeing in the closet." When Chief Prey first made contact with appellant, appellant was "kind of mumbling to himself," seemed confused, and "wasn't making any sense." Chief Prey told appellant that he did not find any evidence in the closet that a cigarette accidentally started the fire. Appellant responded that he may have set the fire in the closet with a cigarette or a lighter. Chief Prey also interviewed Escalante at the scene and again later in his office. According to Chief Prey, appellant's version of events did not "match up" to the facts reported by other witnesses at the scene.

On cross-examination, Chief Prey stated that he concluded the fire started in the closet and was ignited by either a cigarette or a lighter using some of the polyester clothing in the closet. Although cigarettes were found in the apartment, no cigarettes were found under the clothing in the closet. Matches, lighters, and ash trays with cigarettes in them were also found in the apartment. Chief Prey did not recall finding a "hot plate" in the apartment and did not recall anyone at the scene mentioning a "hot plate." Chief Prey said that in her statement, Escalante did not mention that she had

5

seen appellant start the fire with a towel and a "hot plate."

The State and defense rested. The jury found appellant guilty and sentenced him to ninety-nine years' imprisonment. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we review claims of evidentiary insufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906–07, 912. Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the

6

testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

A person commits the offense of arson if he starts a fire with intent to destroy or damage a building or habitation within the limits of an incorporated city or town. TEX. PENAL CODE ANN. § 28.02(a)(2)(A); *Orr v. State*, 306 S.W.3d 380, 394 (Tex. App.—Fort Worth 2010, no pet.). "To establish the corpus delicti in arson cases it is necessary to show that a fire occurred and that the fire was designedly set by someone." *Orr*, 306 S.W.3d at 394 (quoting *Mosher v. State*, 901 S.W.2d 547, 549 (Tex. App.—El Paso 1995, no pet.). "[T]he offense of arson is complete whenever the actor starts a fire with the requisite culpable mental state, whether or not damage of any kind actually occurs." *Mosher*, 901 S.W.2d at 549.

A person commits arson with specific intent to damage or destroy a building, habitation, or vehicle if it is the person's conscious objective or desire to engage in the conduct or cause the result. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *see Scruggs v. State*, No. 14-09-00329-CR, 2010 Tex. App. LEXIS 3750, at *4–5 (Tex. App.—Houston [14th] Dist. May 20, 2010, no pet.) (mem. op., not designated for

publication); *see also* Tᴇx Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 6.03(a) (West 2011).  A jury may infer intent from any facts that tend to prove its existence, such as acts, words, and conduct of the defendant.  *Orr*, 306 S.W.3d at 394–95.  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Id.* at 395 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).  "Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt."  *Id.* (quoting *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)).  Each fact need not point directly and independently to the guilt of the accused, so long as the logical force of the probative evidence, when coupled with reasonable inferences to be drawn therefrom, is sufficient to support the conviction.  *Id. (*citing *Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006)).

### III. Dɪscᴜssɪᴏɴ

Appellant argues that the evidence is insufficient to prove that he acted with the intent to commit arson.  Appellant asserts that the State's evidence constitutes "mere surmise" that appellant intentionally started the fire.  Appellant also argues that "[i]t is difficult to decipher how a rational jury could resolve [Escalante's] testimony with that of the other witnesses" to conclude that appellant was guilty of arson.  We disagree.

The evidence showed that:  (1) appellant had threatened to set everyone's house on fire; (2) appellant was acting erratically, beating on his neighbors' doors, tearing at the outside wall, and chasing the security personnel; (3) when Lou and Troy noticed smoke coming from appellant's apartment, they did not see anyone else in the vicinity; (4) Escalante testified that appellant started the fire using a "hot plate" and a towel; and

8

(5) Chief Prey testified that he found no evidence of an accidental fire.  Appellant's inconsistent statements regarding the fire included that the fire was started by "a guy," by his brother's girlfriend, by two women, and possibly accidentally by himself.  *See Guevara*, 152 S.W.3d at 50 (recognizing that inconsistent statements and implausible explanations are circumstances of guilt).  Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant started the fire and had the specific intent to damage or destroy the apartment building when he did so.  *See Orr*, 306 S.W.3d at 396. We hold that the evidence was sufficient to support the jury's verdict and overrule appellant's sole issue.

## IV. Conclusion

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Do not publish.
Tex. R. App. P. 47.2(b)

Delivered and filed the
15th day of November, 2012.

9