Kay J. ANDERSON a/k/a Kerine
J. Anderson, Appellant,

v.

STATE of Texas, Appellee.

No. 14–08–01054–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 31, 2010.

Vivian R. King, Houston, for Appellant.

Bridget Holloway, Houston, for Appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and BOYCE.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Kay J. Anderson a/k/a Kerine J. Anderson, was convicted of misapplication of fiduciary property and theft based on her handling of investment funds. She was sentenced to 20 years in prison on each conviction, the sentences to run concurrently. In three issues, appellant contends that (1) the evidence is legally and factually insufficient to uphold her convictions and (2) prosecution for the offense of theft was barred by the applicable statute of limitations. We affirm appellant's conviction for misapplication of fiduciary property, reverse appellant's conviction for theft, and render judgment of acquittal on the theft conviction.

## I. BACKGROUND

Texoil Corporation, created in 1979, developed oil reserves and oil property. The company created 20 general partnerships; under these general partnerships, thousands of limited partnerships were created. The limited partnerships were capitalized by investors who each agreed to execute promissory notes payable to Texoil Corp. in the amount of $250,000. The terms of the promissory notes required

the limited partnership investors to make annual contributions. For their $250,000 investment in Texoil Corp., the investors were entitled to tax deductions for the face value of the note.

Under the tax scheme, the limited partnership investors did not pay the full $250,000. In the first year, investors made minimal cash contributions but took a tax deduction on the full value of the note. In the following years, the investors did not make cash contributions but executed additional promissory notes to pay the required annual contribution. The investors continued to take tax deductions on the entire $250,000. Ultimately, the Internal Revenue Service determined that the limited partnerships were illegal tax shelters and disallowed tax deductions for the face value of the promissory notes. No further contributions or investments were made to Texoil Corp.

Appellant acquired Texoil Corp. in 1989. At the time, the limited partnership investors owed as much as one billion dollars on the promissory notes. In 1996, appellant created Texoil L.L.C. to liquidate the promissory notes. Five of the 20 general partnerships in Texoil Corp. were transferred to Texoil L.L.C, leaving Texoil Corp. with 15 of the general partnerships and Texoil L.L.C. with five. Appellant then attempted to collect on the approximately 4,000 limited partnership notes. Appellant claimed that she had planned to monetize the notes by (1) allowing the limited partnership investors to settle their Texoil debt for a fraction of the amount due, $50,000, and (2) buying a life insur-

ance policy on the lives of these investors.[1] Texoil Corp. and Texoil L.L.C. could immediately use the policies as collateral and would be paid cash proceeds, $250,000, upon each of the investors' deaths. Appellant persuaded the complainants, David Lamonica, Patricia Bond, and Charles Steinberg, to invest funds in Texoil L.L.C. in order to assist her collection of the limited partnership notes.

## A. David Lamonica

David Lamonica, a licensed insurance producer, was the first complainant to invest in Texoil L.L.C.'s collection efforts. According to Lamonica, appellant represented that she owned Texoil Corp. and Texoil L.L.C. and that she was in possession of the thousands of limited partnership notes executed in the 1980s. Appellant explained to Lamonica that she had planned to monetize the notes by allowing the limited partnership investors to settle their Texoil debt for a fraction of the amount due and, in turn, obtain life insurance policies on the lives of the investors. Appellant offered Lamonica two investment opportunities: (1) 10% of the funds recovered by the limited partnership investors if Lamonica invested in appellant's collection efforts, and (2) commissions on any insurance policies he sold on the lives of the limited partnership investors.

In December 1998, Lamonica began a series of investments, which ultimately totaled $175,000 over the next year. With each investment, Lamonica demanded that the investment be used solely for collec-

1. "Monetize" means to coin into money, assigning a present dollar value to something lacking an easily ascertainable present value. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1458 (1993). In this case, the limited partnership promissory notes would not have had a present value because they would be paid for with the insurance policies on the lives of the origi-

nal investors. The cash proceeds from those insurance policies would not be paid out until the death of the investor. Therefore, in order to use the notes as ready money, the notes would have had to be monetized based on the present value of the life insurance policies used to purchase the notes.

tion efforts on the notes. Even though appellant and her attorney assured Lamonica that the notes were in appellant's possession and that his investments would be used for collection purposes, appellant never produced the notes, even upon Lamonica's demands. Furthermore, no settlement letters were sent to the original limited partnership investors, and no life insurance policies were obtained on the lives of the investors. After appellant failed to collect on the notes, Lamonica stopped investing in Texoil L.L.C. He later sued appellant for her handling of his $175,000 investment in Texoil L.L.C.

### B. Patricia Bond

Patricia Bond was the second complainant to invest in Texoil L.L.C.'s collection efforts. According to Bond, appellant represented that she owned Texoil L.L.C. and was in possession of the thousands of limited partnership notes worth a billion dollars. In 1999, appellant offered Bond a 1% interest in Texoil L.L.C. and a return investment of $300,000 by the third quarter of 2000 in consideration of a $100,000 investment. Bond did not have $100,000 in cash but was able to use an interest in her ex-husband's retirement plan acquired during her divorce. Because Bond's interest was in a tax deferred retirement plan, if the $100,000 was not repaid to the plan within 90 days, severe tax penalties would be assessed. Appellant convinced Bond that she would be able to repay the $100,000 before the tax penalties were triggered and that she would receive three $100,000 payments by the third quarter of 2000. Based on appellant's representations, in August 1999, Bond withdrew the $100,000 from the retirement plan, invested in Texoil L.L.C, and waited for the return on her investment.

When Bond failed to receive the $100,000, she was unable to timely repay the plan; consequently tax penalties were assessed at $150,000. Bond never received any return on her investment. Lamonica later contacted Bond and persuaded Bond to join his civil suit against appellant.

### C. Charles Steinberg

Charles Steinberg was the third complainant to invest in Texoil L.L.C.'s collection efforts. Appellant represented that she owned Texoil L.L.C. and was in possession of the thousands of limited partnership notes worth a billion dollars. Initially, Steinberg was approached to help contact the original limited partnership investors and communicate settlement offers. Through his company, AON, Steinberg would also assist in brokering the life insurance policies that were part of the settlement offers. Steinberg introduced appellant to Fleet Bank of Boston ("Fleet Bank"), which could monetize the notes.

Fleet Bank required $100,000 to monetize the notes. Because neither appellant nor Texoil L.L.C. had the funds, Steinberg paid $100,000 to appellant, who forwarded the payment to Fleet Bank. When the bank subsequently required an additional $100,000, Steinberg paid the second $100,000 to appellant, who did not forward this $100,000 to Fleet Bank. As a condition of a line of credit to appellant, Fleet Bank required copies of the life insurance policies obtained on the lives of the original limited partnership investors. Appellant rejected this condition. Fleet Bank returned $93,000 from the first $100,000 to appellant and made no further efforts to monetize the notes. No funds were returned to Steinberg.

After many attempts to recover his $200,000 investment, Steinberg obtained a promissory note from appellant in the amount of $200,000. Appellant did not pay the note. Thereafter, Lamonica contacted Steinberg and persuaded Steinberg to par-

ticipate in a forced bankruptcy proceeding against Texoil L.L.C. In 2004, Lamonica, Bond, and Steinberg forced Texoil L.L.C. into Chapter 11 bankruptcy. During the bankruptcy proceeding, the trustee determined that the limited partnership notes were the only assets belonging to Texoil L.L.C. Accordingly, the bankruptcy judge ordered appellant to produce the notes to the trustee. Appellant attempted to produce the 20 general partnership notes but could not produce the limited partnership notes. She admitted that she was not in possession of the limited partnership notes and did not know their location.

### D. Underlying Criminal Proceedings

In August 2005, a grand jury indicted appellant for (1) misapplication of fiduciary property, (2) theft, and (3) misrepresentation of material facts under the Texas Securities Act. Appellant pleaded not guilty, and her case was tried before the court. Prior to trial, appellant sought to quash the indictment for theft, arguing that it was barred by the applicable statute of limitations. The trial court denied her motion.

At trial, appellant disputed evidence that she told the complainants she possessed the limited partnership notes. According to appellant, she never solicited an investment from Bond, and she told Lamonica that she intended to collect only on the general partnership notes. After hearing testimony from the three complainants, the bankruptcy trustee, appellant, and security and accounting experts, the trial court found appellant guilty of misapplication of fiduciary property and theft. Appellant received two concurrent 20 year sentences for these convictions. The trial court found appellant not guilty of the securities fraud offense because it was barred by the statute of limitations.

In three issues, appellant contends that (1) the evidence is legally and factually insufficient to uphold her convictions, and (2) prosecution for the offense of theft was barred by the applicable statute of limitations.

## II. MISAPPLICATION OF FIDUCIARY PROPERTY

### A. Legal and Factual Sufficiency: Standards of Review

In her first two issues, appellant challenges the legal and factual sufficiency of the evidence to uphold her conviction for misapplication of fiduciary property and theft. In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether a rational fact-finder could have found the defendant guilty of all the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Williams v. State*, 270 S.W.3d 140, 142 (Tex.Crim.App.2008). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App.2008). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000) (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

In a factual sufficiency review, we review all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex.Crim.App.2006). We then ask (1) whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the verdict seems clearly wrong and manifest-

ly unjust, or (2) whether, considering the conflicting evidence, the verdict is against the great weight and preponderance of the evidence. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006); *Watson,* 204 S.W.3d at 414–17. We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the fact-finder's resolution of that conflict. *Watson,* 204 S.W.3d at 417. If an appellate court determines that the evidence is factually insufficient, it must explain in exactly what way it perceives the conflicting evidence greatly to preponderate against conviction. *Id.* at 414–17.

### B. Misapplication of Fiduciary Property

 A person commits misapplication of fiduciary property if she misapplies property, held as a fiduciary, and such misapplication involves a substantial risk of loss to the owner of the property or to a person for whose benefit the property is held. *See* Tex. Penal Code Ann. § 32.45(a)-(b) (Vernon Supp.2009). "Misapply" means to deal with property contrary (1) to an agreement under which the fiduciary holds the property; or (2) by law prescribing the custody or disposition of the property. *Id.* § 32.45(a)(2). The agreement need not be written, but must merely be a harmonious understanding as to a course of action. *Bynum v. State,* 767 S.W.2d 769, 777 (Tex.Crim.App. 1989). "[A] fiduciary is one in whom another has justifiably reposed confidence to act in a certain manner." *Talamantez v. State,* 790 S.W.2d 33, 35 (Tex.App.-San Antonio 1990, pet. ref'd); *see also Coplin v. State,* 585 S.W.2d 734, 735 (Tex.Crim. App.1979) (holding that fiduciary capacity includes joint adventurers, partners and other fiduciary relationships not specifically mentioned in the statute). Appellant challenges the "misapplication" element, arguing that she acted in conformity with

her agreements with the complainants by exercising due diligence to monetize the notes.

The record reflects that appellant, acting as a fiduciary to each of the complainants, misapplied the investment funds by acting contrary to the investment agreements. Lamonica testified that he invested a total of $175,000 in Texoil L.L.C. under purchase and joint venture agreements. Section 1.04 of the purchase agreement reflected that Lamonica's investment was necessary to implement a collection program for certain notes receivable. Section 1.03(a) of the joint venture agreement with Texoil L.L.C. indicated that the primary purpose of the venture was to collect certain notes receivable. Lamonica further testified that he and appellant agreed that the investment funds would be used exclusively for the purpose of monetizing the limited partnership promissory notes. The evidence reflects that appellant did not use the investment funds for that purpose.

Lamonica testified that no settlement letters were sent to the original limited partnership investors and that no life insurance policies were obtained on the lives of the investors. There was evidence that appellant was never in possession of the limited partnership notes and made no effort to monetize the notes; in fact, she abandoned a number of opportunities to monetize the notes. Furthermore, there is evidence that appellant spent Lamonica's investment funds on legal fees associated with her federal criminal case in Illinois and with an automobile dealership.

Bond testified that she withdrew $100,000 from a tax deferred retirement plan and gave the funds to appellant as an investment in Texoil L.L.C. Appellant agreed that the investment funds would be used to monetize the limited partnership

notes. Appellant convinced Bond that she would be able to repay the $100,000 before the tax penalties were triggered and that she would receive three $100,000 payments in the first three quarters of 2000. Bond withdrew the $100,000 from the retirement plan and invested in Texoil L.L.C. Because she did not receive any return on her investment, Bond was unable to timely repay $100,000 to the plan; consequently tax penalties were assessed at $150,000. Furthermore, the evidence reflects that none of Texoil's expenditures went to the collection of the limited partnership notes.

Steinberg testified that he invested $200,000 in Texoil L.L.C. for the purpose of monetizing the limited partnership notes. Steinberg and appellant agreed that the funds would be transferred to Fleet Bank, who in turn would assist in monetizing the notes. While appellant forwarded Steinberg's initial $100,000 to Fleet Bank, she did not forward the second $100,000 to the bank. Although Fleet Bank returned $93,000 to appellant when she refused to provide copies of the life insurance policies, no funds were returned to Steinberg. The evidence reflects that appellant made no further efforts to monetize the notes. The evidence also reflects that none of Texoil L.L.C's expenditures went to the collection of the limited partnership notes.

Appellant heavily disputed the complainants' testimony and identifies on appeal some inconsistencies in the complainants' testimony. The judge, as the fact finder, was the sole judge of the weight and credibility given to any witness's testimony. *See Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000). The trial court's verdict in this case was not manifestly unjust merely because it resolved conflicting views of the evidence in favor of the State. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997).

We conclude that the evidence is legally and factually sufficient to prove that appellant misapplied the complainants' property by using the investment funds contrary to the investment agreements. The record reflects that Texoil L.L.C. held the investment funds for the purpose of monetizing the limited partnership notes. However, no settlement letters were executed, no insurance policies were obtained, and no monetization of the notes ever occurred. Appellant admitted that she never possessed the limited partnership notes. Appellant abandoned many opportunities to monetize the notes, and no complainant received his or her money back. We overrule appellant's first issue.

## III. AGGREGATE THEFT

Appellant challenges her theft conviction in her second and third issues. In her second issue, she claims that the evidence is legally and factually insufficient to sustain her theft conviction. In her third issue, appellant argues that prosecution for theft was barred by the statute of limitations. We address the latter issue first.

Before trial, appellant filed a motion to quash the indictment on the theft count based on the expiration of the statute of limitations. Appellant renewed her limitations challenge during trial. The trial court overruled both motions.

A theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03. The statute of limitations for felony theft is five years. Code Crim. Proc. Ann. art. 12.01(4)(A) (Vernon 2005). The Texas Penal Code allows multiple thefts committed pursuant to one scheme or continuing course of conduct—at different times and against different victims—to aggregate within one offense for purposes

of the offense grade. Tex. Penal Code Ann. § 31.09. Aggregation under section 31.09 creates a single new offense for jurisdiction, punishment, and statute of limitations purposes. *Graves v. State,* 795 S.W.2d 185, 187 (Tex.Crim.App.1990). Each individual theft and its elements become an element of the aggregate theft offense. *State v. Weaver,* 982 S.W.2d 892, 893 (Tex.Crim.App.1998). The limitations period for aggregate theft begins to run after the last theft is completed. *Tita v. State,* 267 S.W.3d 33, 35 n. 1 (Tex.Crim. App.2008). A theft is complete when all the elements have occurred. *Barnes v. State,* 824 S.W.2d 560, 562 (Tex.Crim.App. 1991), *overruled on other grounds by Proctor v. State,* 967 S.W.2d 840, 842 (Tex. Crim.App.1998). Theft is not a continuing offense—it does not continue as long as the actor retains control of the stolen property. *Barnes,* 824 S.W.2d at 562; *see also Cupit v. State,* 122 S.W.3d 243, 246 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd.). Nor does the aggregate theft statute convert theft into a continuing offense. *See Dickens v. State,* 981 S.W.2d 186, 188 (Tex.Crim.App.1998) ("Aggregated theft is the sum of all its parts. A part is a completed theft whose elements have all been proven."). Rather, aggregated theft is an offense with continuing conduct that ends with the last theft, and not after. *Tita,* 267 S.W.3d at 35 n. 1 (noting that the date of the last theft is the end date of the scheme or continuing course of conduct under the aggregate theft statute). Moreover, "[t]heft by exercising control is committed and the statute of limitations commences once possession of the property becomes unlawful." *Barnes,* 824 S.W.2d at 562–63.

■ The statute of limitations began to run in this case when appellant committed the last theft; this occurred when she unlawfully appropriated Steinberg's money. *See id.* The evidence presented at trial shows that the last transfer Steinberg made to appellant was on June 1, 2000. Appellant did not appropriate any additional funds after the June 1, 2000 transfer. Therefore, the statute of limitations on the offense of theft began to run on June 1, 2000, meaning that it expired on June 1, 2005. Appellant was indicted on August 17, 2005—outside the statute of limitations.

■ The State does not dispute the date of the last unlawful appropriation but characterizes other acts as an element of theft triggering the statute after June 1, 2000. The State argues that appellant's subsequent misrepresentations—made until well within the statute of limitations— completed the theft. According to the State, the theft was completed when appellant made the last misrepresentation regarding the monetizing of the notes. We reject the State's interpretation of the theft statute. A theft has occurred when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property. Tex. Penal Code Ann. § 31.03. When appellant unlawfully appropriated Steinberg's second $100,000, the other theft elements were present. Therefore, the theft was complete when appellant appropriated the last $100,000. While appellant continued to make misrepresentations regarding the investment funds, those misrepresentations did not create a new theft offense within the scheme because no additional property was appropriated. *See id.* A theft occurs only when there is an unlawful appropriation of property. The subsequent misrepresentations, alone, did not create a new theft in the scheme.

Accordingly, we conclude that the prosecution for theft was barred by the statute of limitations. We sustain appellant's

third point of error.[2] We reverse appellant's conviction for theft and render judgment of acquittal for the theft conviction. We affirm the verdict for misapplication of fiduciary property.

---

2. Having concluded that the theft count was barred by the statute of limitations, we do not reach appellant's second issue challenging the sufficiency of the evidence.