**Affirmed and Opinion filed March 21, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00162-CR

---

**SHANEQUA TERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1288605**

---

## OPINION

Appellant Shanequa Terry appeals her conviction of aggregate theft, stemming from her applications for and receipt of food stamps. She challenges the sufficiency of the evidence to support the conviction. In addition, she asserts the

trial court violated her rights under the Confrontation Clause of the United States Constitution by admitting certain records into evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of theft in connection with appellant's applications for and receipt of food stamps. As alleged in the indictment, "pursuant to one scheme and continuing course of conduct" appellant unlawfully appropriated, by acquiring and exercising control over, food stamps owned by the State with intent to deprive the State of that property. The conduct was alleged to have occurred beginning on or about May 1, 2007, and continuing through March 31, 2008, and November 1, 2009, and continuing through December 31, 2009. The value of the food stamps was $3,026. Appellant pleaded "not guilty" to the charged offense.

At trial, the State presented evidence that appellant, a single mother of three children, applied for assistance with the Supplemental Nutrition Assistance Program ("SNAP"), a "food-stamp" program associated with the Texas Health and Human Services Commission. According to testimony at trial, the program provides a "Lone Star Card," a special debit card that contains a fixed amount of money that a recipient may use to purchase food and other basic necessities.

Generally, after an applicant files a handwritten application, a caseworker from the Health and Human Services Commission interviews the applicant and enters the applicant's answers into a computer program during the interview. According to the record, when calculating benefits, the caseworkers rely heavily on applicants' representations in entering information into the computer program. Although caseworkers attempt to verify representations for accuracy, not all employers are required to report employment information to the State, and, with

respect to those that do report, the information could be two to three months old at the time it is reported.

Based on the information entered into the computer, a "generic worksheet" is generated by the computer program. The generic worksheet reflects all of the information that the computer program uses to calculate benefits awarded to the applicant, including the interviewer's work product, a synthesis of information from the applicant's handwritten application, supporting documents, and oral responses given by the applicant at the interview. Recipients of the assistance may apply every six months to renew the benefits.

Kenneth Martin, a program supervisor for the Texas Health and Human Services Commission, testified that an applicant's eligibility for assistance and the benefit amount is not determined by the caseworker; rather, "the [computer] system determines" it. Martin further testified that income and household size are primary factors for calculating benefits. According to Martin, if an applicant failed to report income, the applicant could receive more benefits than the applicant would be entitled to receive.

The record reflects that the Texas Department of Health and Human Services first received an application for SNAP benefits for appellant and two children on May 8, 2007.[1] As reflected in the handwritten application, appellant had not worked in the prior three months. Appellant attended an interview with a caseworker on May 21, 2007. A generic worksheet, State's Exhibit 7, prepared during the interview reflects the following statements:

- appellant's only income was from child support;

---

[1] The document bears appellant's purported signature and the date "4/11/07."

3

- appellant had no other income or contributions from any other sources; and
- appellant had not worked in the past twelve months.

The record reflects that appellant was eligible for $408 in monthly SNAP benefits. Although the generic worksheet was admitted into evidence, the caseworker who conducted the interview with appellant did not testify.

The record reflects that appellant filed a renewal application for SNAP benefits on November 5, 2007, for herself and two children. The application reflects that appellant had not worked in the prior three-month period. Appellant attended an interview on November 16, 2007. A generic worksheet, State's Exhibit 4, compiled during appellant's interview on November 16, 2007, reflects the following statements:

- appellant's only income was from child support; and
- appellant was looking for work.

Although the generic worksheet was admitted into evidence, the worker who conducted the interview with appellant did not testify.

It is undisputed that appellant continued to receive SNAP benefits through December 2009. The record contains another application for renewal of SNAP benefits, received on April 15, 2009, for appellant and three children.[2] The application reflects that appellant had not worked in the prior three months and listed child support as appellant's only income.

The record reflects that appellant attended another interview with a caseworker on October 22, 2009, but there was no application in the record associated with this interview. As reflected in this generic worksheet, State's

_____

[2] The record reflects that a third child was born in 2008.

Exhibit 2, generated during the interview, appellant continued to receive child support, but was "no longer working for Pubsco, Inc. as of 7/15/2009." As reflected in the generic worksheet, appellant also had received "vendor payments." The interviewer who prepared the generic worksheet did not testify.

In June 2010, the Department of Health and Human Services initiated an investigation of appellant's SNAP benefits after the Texas Workforce Commission reported that appellant had been receiving income from two companies: "Bargain Network" and "Pubsco." Richard Ramirez, a senior investigator with an investigative division of Texas Health and Human Services Commission, conducted the investigation of welfare fraud. Ramirez obtained pay records from the Bargain Network, reflecting a pay period for appellant beginning April 16, 2007, and that appellant's last pay period ended in March 2008. Pay records from Pubsco reflect that appellant first received a paycheck on September 11, 2009, and that appellant's last paycheck was dated January 8, 2010.

Because Ramirez's investigation for welfare fraud pertained to two relevant time periods, he obtained the generic worksheets associated with appellant's receipt of SNAP benefits relevant to those time periods and compared them to the employers' records. Ramirez did not have access to the applications associated with those same time periods. After reviewing those generic worksheets, Ramirez determined that appellant's income from Bargain Network and Pubsco had not been reported to the Texas Health and Human Services Commission; none of the generic worksheets reflected that she reported such income to a caseworker.

Ramirez entered appellant's pay information from Bargain Network into a computer program, which calculated that, from May 2007 until March 2008, appellant had received $2,798 more in benefits than she was eligible to receive.

5

Based on appellant's employment with Pubsco, appellant received $228 per month more than she was entitled to receive in November 2009 and December 2009. In all, appellant received $3,026 more in benefits than she should have received. Ramirez testified that failing to report income would not have disqualified appellant from receiving SNAP benefits, but that appellant's income from her employment at Bargain Network and Pubsco would have affected the amount of benefits she was entitled to receive each month. According to Ramirez, appellant was not entitled to receive any benefits in some months, based on appellant's income during that time.

Ramirez testified that he interviewed appellant on October 12, 2010; the recorded audio interview was offered into evidence. As reflected in the video, appellant claimed to have reported income from the two part-time jobs to a local SNAP office at "Greenspoint." Appellant claimed that SNAP records at the Greenspoint office would reflect that she offered the information. Ramirez attempted to locate records of those telephone calls at the local office, but did not locate them. Ramirez surmised that the records could be in storage in Austin, Texas; he indicated he was unable to access them. Ramirez stated that if an applicant already was working at the time of an application or interview, there would be no need to report the same employment by telephone at a later date. Ramirez filed a report with the Harris County District Attorney's Office one month later, which resulted in the charges against appellant.

At the close of the State's case, appellant moved for an instructed verdict, which the trial court denied. The jury found appellant guilty of the charged offense. Appellant was sentenced to 180 days' confinement in state jail, probated for two years. She now appeals the conviction.

6

## Is the evidence sufficient to support appellant's conviction for aggregate theft?

In her first issue, appellant challenges the sufficiency of the evidence to support her conviction, claiming that reasonable doubt exists as to whether she reported her part-time employment to the State when she applied for benefits. In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

Unlawful appropriation of food stamps is chargeable under the general theft statute. *See Gomez v. State*, 663 S.W.2d 662, 663–64 (Tex. App.—Corpus Christi 1983, no pet.); *see also Ex Parte Mangrum*, 564 S.W.2d 751, 756 (Tex. Crim. App.

1978) (providing that unlawfully obtaining welfare assistance is properly charged under the general theft statute). A person commits the offense of theft if that person unlawfully appropriates property with intent to deprive the owner of the property. *See* Tex. Penal Code Ann. § 31.03(a) (West Supp. 2012). As alleged in this case, a person commits the offense, a state jail felony, if the property unlawfully appropriated is valued at $1,500 or more, but less than $20,000. *See* Tex. Penal Code Ann. §§ 31.03(a), 31.03(e)(4)(A) (West Supp. 2012). A person acts with intent when it is the person's conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011). Appropriation of property is unlawful if it is "without the owner's effective consent." Tex. Penal Code Ann. § 31.03(b)(1). Consent is not effective if it is induced by deception or coercion. Tex. Penal Code Ann. § 31.01(3)(A) (West Supp. 2012). Deception means "[c]reating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." Tex. Penal Code Ann. § 31.01(1)(A). Intent may be inferred from the circumstances. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998); *Reed v. State*, 158 S.W.3d 44, 48 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The Texas Penal Code allows multiple thefts committed pursuant to one scheme or continuing course of conduct—even at different times and against different victims—to aggregate within one offense for the purposes of determining the grade of the offense." Tex. Penal Code Ann. § 31.09 (West 2011); *Anderson v. State*, 322 S.W.3d 401, 407–08 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Aggregation under section 31.09 creates a single offense for purposes of jurisdiction, punishment, and statute of limitations. *Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990); *Anderson*, 322 S.W.3d at 408. Each individual

8

theft and its elements become an element of the aggregate theft offense. *State v. Weaver*, 982 S.W.2d 892, 893 (Tex. Crim. App. 1998); *Anderson*, 322 S.W.3d at 408. A theft is complete when all the elements have occurred. *Barnes v. State*, 824 S.W.2d 560, 562 (Tex. Crim. App. 1991), *overruled on other grounds by Proctor v. State*, 967 S.W.2d 840, 842 (Tex. Crim. App. 1998); *Anderson*, 322 S.W.3d at 408. Theft is not a continuing offense as it does not continue as long as the actor retains control of the property. *Barnes*, 824 S.W.2d at 562; *Anderson*, 322 S.W.3d at 408. Likewise, the aggregate-theft statute does not convert theft into a continuing offense. *See Dickens v. State*, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998) (providing that aggregate theft is the sum of all its "parts" and that a part is a completed theft whose elements have all been proven). Aggregate theft is an offense with continuing conduct that ends with the last theft and not after. *Tita v. State*, 267 S.W.3d 33, 35 n.1 (Tex. Crim. App. 2008) (providing that date of the last theft is the end date of the scheme or continuing course of conduct); *Anderson*, 322 S.W.3d at 408.

Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence, alone, is sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). While an inference is a conclusion reached by considering other facts and deducing a logical sequence from those facts, speculation is mere theorizing or guessing about the possible meaning of facts and evidence. *Id.* at 16. Although a conclusion based on speculation may not be unreasonable, it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *See id.*

The record reflects that Ramirez obtained pay records from Bargain Network and Pubsco, showing that appellant was receiving income from April 2007 through March 2008 and from September 2009 through January 2010.

Ramirez testified that he obtained generic worksheets[3] prepared during appellant's interviews with caseworkers during each of the periods of alleged fraud. Ramirez determined that none of the generic worksheets reflected that appellant reported the income to the caseworker. *See* Tex. Penal Code Ann. § 31.01(1)(A) (defining "deception" as creating a false impression through words or conduct that will likely affect the judgment of another in a transaction that the actor does not believe is true). The State's evidence established that in May 2007 and November 2007, and again in October 2009, appellant was employed when she applied for SNAP benefits, interviewed with a caseworker, and ultimately received SNAP benefits as a result of the applications or interviews. It is undisputed that appellant continuously received SNAP benefits from May 2007 through December 2009; the record reflects that appellant was approved to receive and actually did receive SNAP benefits for a six-month period after each application and interview. The record reflects that on each of the applications and interviews, appellant failed to report the income from Bargain Network or Pubsco and received in total $3,026 more in benefits than she should have received during those same intervals. On each of these occasions, evidence that appellant applied for and received the benefits without reporting income from Bargain Network or Pubsco supported the jury's finding that appellant unlawfully appropriated the benefits by deceiving the Texas Health and Human Services Commission. *See* Tex. Penal Code Ann. §§ 31.01(1)(A), 31.01(3)(A), 31.03(a), 31.03(b)(1). The evidence likewise supports

---

[3] In her second issue, which we address below, appellant challenges the propriety of the trial court's admission of the generic worksheets. But, in a sufficiency review, a reviewing court considers all evidence, whether properly or improperly admitted at trial, that the jury was permitted to consider. *Moff v. State*, 131 S.W.3d 485, 488, 488–89 (Tex. Crim. App. 2004); *see Wooten v. State*, 267 S.W.3d 289, 295 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

the conclusion that appellant intended to deprive the Texas Health and Human Services Commission of the benefits. *See* Tex. Penal Code Ann. § 6.03(a).

Appellant asserts that reasonable doubt exists on the record as to whether appellant reported her employment at Bargain Network and Pubsco. Appellant asserts that there is a two-year "gap" in the State's proof that could have shown, as appellant claimed, that appellant reported her income from Bargain Network and Pubsco, in her interview with Ramirez. Appellant points to the October 2009 generic worksheet, reflecting statements that her employment ended at Pubsco in July 2009, and asserts that this evidence suggests that documents from this two-year "gap" would contain proof that she previously had disclosed her employment. Appellant also asserts the same two-year "gap" exists in the indictment, noting that despite the allegation of a continuing course of conduct, the indictment alleged conduct that ended in March 2008, and began again in November 2009.

As for appellant's complaint that a two-year "gap" exists in the indictment, the State did not allege aggregate theft during the times appellant had no income. With aggregate theft, each individual theft offense is complete when all elements have occurred. *Anderson*, 322 S.W.3d at 408. Theft is not a continuing offense, continuing as long as the actor retains control of the property. *See id.* The record reflects that appellant received benefits for a six-month period following the applications or interviews in May 2007, November 2007, and October 2009. Each time that appellant concealed her Bargain Network or Pubsco income in an application or interview and then received SNAP benefits resulted in overpayment of benefits and was a completed theft. *See id.* Whether appellant later disclosed income is not relevant because the thefts were completed at the time she accepted the benefits. *See id.* (involving a defendant that continued to make misrepresentations after elements of a theft were completed, but providing that the

misrepresentations did not create a new theft since the prior thefts, comprising aggregate theft, already were complete). Likewise, the fact that the State did not present all of appellant's applications or worksheets does not change the fact that appellant committed the offense of theft in the aggregate. *See* Tex. Penal Code Ann. §§ 31.03(a), 31.03(e)(4)(A); *see Anderson*, 322 S.W.3d at 408 (providing that theft is completed when all of the elements of theft are met). Multiple thefts committed pursuant to one scheme or continuing course of conduct at different times and against different people may be aggregated within one offense for purposes of the offense grade. *Id.* at 407–08.

To the extent appellant relies on the statements in the October 2009 generic worksheet about her work at Pubsco ending in July 2009 as evidence suggesting she previously had to have informed caseworkers about her employment at Pubsco, the record reflects that appellant did not begin to receive income or paychecks from Pubsco until September 11, 2009, and that she remained employed at Pubsco at the time of her October 22, 2009 interview with the caseworker. Given the record evidence that appellant was untruthful about the dates she worked at Pubsco, the jury was entitled to conclude that appellant's explanation to Ramirez about reporting the income at a later date was not credible. *See, e.g.*, *Fuentes*, 991 S.W.2d at 271 (providing that the trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence"); *Sharp*, 707 S.W.2d at 614 (providing that a trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony).

Appellant points to Martin's testimony that proper procedures and protocols are followed during applicants' interviews with caseworkers in "most" cases, suggesting incompetence on the part of caseworkers in failing to record appellant's statements about her income during an interview. Arguably, though it might be

12

reasonable to infer that one of the caseworkers who interviewed appellant might have failed include remarks in a generic worksheet that appellant earned income from Bargain Network or Pubsco, the jury reasonably could have concluded from all of the generic worksheets and all of the applications admitted into evidence that appellant omitted information about her income and employment at the time of the applications or interviews because it is undisputed that she was employed during those times. *See Smith*, 965 S.W.2d at 518 (providing that intent could be inferred from circumstances). A juror reasonably could infer that had appellant already reported her income, she would have continued to include that income in subsequent applications, especially given that she consistently reported child support. *See id.* The record also contains Ramirez's testimony that there would be no need to report income at a later date if appellant already was employed at the time of an application or an interview with a caseworker. The jury was entitled to weigh Ramirez's testimony and credibility and accept or reject it. *See Fuentes*, 991 S.W.2d at 271 (providing that the trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence"); *Sharp*, 707 S.W.2d at 614 (providing that a trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony).

Viewing the evidence in the light most favorable to the verdict, the evidence is sufficient to support beyond a reasonable doubt that appellant unlawfully appropriated $3,026 from the Texas Health and Human Services Commission from May 1, 2007, and continuing through March 31, 2008, and from November 1, 2009, continuing through December 31, 2009, with intent to deprive the Texas Health and Human Services Commission of this sum. *See Anderson*, 322 S.W.3d at 408. We find no merit in appellant's challenge to the sufficiency of the evidence supporting her conviction. Accordingly, we overrule appellant's first issue.

13

**Did the trial court err in admitting into evidence worksheets from caseworkers' interviews with appellant?**

In her second issue, appellant claims the trial court erred in admitting three of the generic worksheets used to calculate benefits that were compiled by state employees who interviewed appellant. According to appellant, her Sixth Amendment right to confrontation was violated by the admission of these documents because the interviewers who prepared the reports did not testify. She complains of Exhibits 2, 4, and 7, the generic worksheets generated following her interviews with caseworkers. The record reflects that before trial, appellant sought to suppress the admission of these worksheets, and the trial court overruled appellant's objections, and granted appellant a running objection. When the State offered the generic worksheets into evidence, the trial court overruled appellant's renewed objections.

The Confrontation Clause of the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Fourteenth Amendment to the United States Constitution makes the Confrontation Clause binding on the States. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). In *Crawford v. Washington*, after reviewing the Confrontation Clause's historical underpinnings, the United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony'" against him. *See* 541 U.S. 36, 51, 68, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004). A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.[4] *Id.*, 541 U.S. at 54, 124

---

[4] The record is silent as to the unavailability of the caseworkers.

S. Ct. at 1365. The high court has limited the Confrontation Clause's reach to testimonial statements. *Id*., 541 U.S. at 68, 124 S. Ct. at 1374.

To determine whether the admission of the generic worksheets violated the Confrontation Clause, we must determine whether the statements in these worksheets are testimonial. *See id.* Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *See Michigan v. Bryant*, —U.S.—,—, 131 S. Ct. 1143, 1154–55, 1165, 179 L. Ed. 2d 93 (2011); *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74, 165 L. Ed. 2d 224 (2006). Statements in business records may be testimonial statements if they satisfy the foregoing legal standard because the regularly conducted business activity may be "the production of evidence for use at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321, 129 S. Ct. 2527, 2538, 174 L. Ed. 2d 314 (2009). Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.[5] *See Bryant*, —U.S. at—, 131 S. Ct. at 1154–55; *Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74. In circumstances not involving ongoing emergencies, statements are nontestimonial if the primary purpose of the interrogation is not to establish or prove past events potentially relevant to later criminal prosecution. *See Bryant*, —U.S. at—, 131 S. Ct. at 1155.

In determining whether the Confrontation Clause bars the admission of a statement at trial, we must determine the "primary purpose of the interrogation" by

---

[5] As the *Davis* court did, we presume without deciding that the acts of the caseworkers may be considered to be acts of the police. *See Davis*, 547 U.S. at 823, n.2, 126 S. Ct. at 2274, n.2.

objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurred. *See id*., —U.S. at —, 131 S. Ct. at 1162. Whether an ongoing emergency existed when the statements were made is an important circumstance that must be taken into account. *See id*. This court must also consider the formality of the encounter during which the statements were made. *See id*., —U.S. at—, 131 S. Ct. at 1160. Formality is not the sole touchstone of the primary purpose inquiry. *See id*. Although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to "establish or prove past events potentially relevant to later criminal prosecution," informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent. *See id*. A trial court's legal ruling as to whether an out-of-court statement is testimonial is a question of law that we review *de novo*. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

The parties have not cited and research has not revealed any precedent addressing whether documents generated during interviews of a party seeking government benefits contain testimonial statements. Although appellant claims that the observations of the caseworkers, as reflected in the generic worksheets, are testimonial in nature and argues that they were generated in anticipation of litigation and were used for that purpose, the record does not support the assertion. The record reflects that caseworkers with the Texas Health and Human Services Commission review applications and certify applicants for welfare benefits following an interview with an applicant. As reflected in the record, the objective purpose of the caseworker's interviews and generating the generic worksheets is to gather and record information about an applicant's current income and household size, among other things, to determine future benefit amounts.

16

Appellant characterizes the reports as being prepared in an "investigative setting." According to appellant, because employees with the Texas Health and Human Services Commission "generate" prosecutions, an interview with a caseworker for SNAP benefits is in anticipation of litigation. She points to the application for SNAP benefits, which references criminal prosecution for an applicant's failure to provide true information in applying for benefits. Although the application contains a warning of criminal prosecution for an applicant who does not provide true information, the record reflects that the primary purpose for preparing and generating the generic worksheets is to document an applicant's statements to determine eligibility and the amount of an applicant's SNAP benefits. The record likewise establishes that there is an investigative division within the Texas Health and Human Services Commission. The caseworkers who interviewed appellant, however, are not part of that division, and the work they performed in interviewing applicants and recording information provided by applicants was not for an investigative purpose or in furtherance of an investigation. Though the application contains a warning pertaining to the applicant's duty to tell the truth, the worksheets were created for the purpose of administering SNAP, a "food-stamp" program associated with the Texas Health and Human Services Commission.

An ongoing emergency did not exist when the worksheets were generated, and the interviews may be considered a formal encounter. Nonetheless, objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interviews occurred, the primary purpose of the interrogation during these interviews is not to establish or prove past events potentially relevant to later criminal prosecution. *See Bryant*, —U.S. at —,131 S. Ct. at 1154–55. Therefore, the statements contained in the generic worksheets are

17

not testimonial, and the trial court's admission of the worksheets did not violate appellant's rights under the Confrontation Clause. *See id.* Accordingly, we overrule appellant's second issue.

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/    Kem Thompson Frost
        Justice


Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).