**Opinion issued March 14, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00072-CR

_____

**CASSAUNDRA DAWN NICHOLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 15CR2104**

---

## MEMORANDUM OPINION

A jury convicted appellant, Cassaundra Dawn Nichols, of aggregate felony theft in an amount greater than $200,000.00[1] and assessed her punishment at 20

---

[1] *See* TEX. PENAL CODE §§ 31.03(a), (e)(7); 31.09. The amount required for a first-degree felony theft has since been raised to $300,000.00. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, 2015 Tex. Sess. Law Serv. 4208, 4211.

years' confinement and a $10,000.00 fine. In two related issues on appeal, appellant contends that (1) the trial court erred in overruling her motion for directed verdict and (2) the evidence is legally insufficient to support her conviction. We affirm.

## BACKGROUND

Appellant was the sole bookkeeper for Benno Enterprises, Inc.[2] During that time, appellant used Benno Enterprises' business account to pay over $440,000.00 toward her own personal credit card debt.[3] Appellant's bookkeeping records show that tax payments were being made to the IRS, but a review of Benno Enterprises' bank records show no payments made to the IRS. Appellant does not dispute that payments were made to her credit card accounts, that she failed to pay the payroll taxes, or that she had access to the accounts.

Benno Deltz, Benno Enterprises' owner, testified that he never authorized payments to appellant's credit cards. He never authorized payments from his company to appellant's Capital One credit card, her Walmart credit card, her daughter's TJ Maxx credit card, of any of the payments shown to her other credit

---

[2] Benno Enterprises includes a catering business, a restaurant, a bakery, and a party rental business.

[3] The evidence showed payments of $421,744.61 to Nichols's Capital One credit card, $12,315.24 to Nichols's Walmart credit card, $2,091.39 to Nichols's daughter's TJ Maxx credit card, and $3,592.87 to Nichols's Valero credit card.

cards. Deltz testified, "I didn't give [appellant] permission for $450,000.00 dollars' worth of bills." Deltz acknowledged that he loaned cash to appellant—mostly from his personal account—and that she paid him back. He did not allow her to use the company credit card for personal charges. Deltz denied that the payments to appellant's credit cards were "under-the-table" payments for putting up with his "shenanigans" or an attempt to hide how much he was paying her from his family.

At trial, appellant, testifying in her own behalf, claimed that Deltz often loaned money to his employees. Appellant testified that she borrowed $500 from Deltz when her daughter started college and that she paid Deltz back a little bit at a time. She testified that she borrowed from him "15, 20 times, 30" over a period of eight years. On another occasion, Deltz purchased a car for her, and then arranged financing for it through Moody Bank. Nichols testified that Deltz would conceal the amount of money that he was loaning her from his family. She claimed that she paid her health insurance with her credit card, which Deltz then paid, but that he did not want his family to know. Appellant said that she often bought office supplies on her credit card, which Deltz then repaid out of the business's account. Appellant acknowledged that she quit paying Benno Enterprises' payroll taxes, alleging an issue with their computer program.

3

Appellant introduced into evidence a $10,000.00 check that she endorsed over to Deltz but acknowledged that the amount was a lot less than the $440,000.00 that had been paid to her credit cards from Benno Enterprises.  She testified that she considered the money going to her credit cards as part of her salary but acknowledged that she did not report it as such to the IRS.   Appellant denied ever using Benno Enterprises' account to pay her own bills without Deltz's consent.  She testified that Deltz was lying when he stated that she did not have his permission to make the payments to her credit cards.  She believed that he was pursuing theft charges against her because "he was terrified of sexual harassment lawsuits and what [she] knew about him and Moody National Bank."[4]

## SUFFICIENCY OF THE EVIDENCE

In issue one, appellant contends that the trial court erred in denying her motion for instructed verdict, and, in issue two, appellant contends that the evidence is legally insufficient to prove theft of over $200,000.00.  In both issues, appellant claims that "the State failed to irrefutably show during the Appellant's testimony that all the amounts taken were not gifts."   Because we treat a trial court's failure to grant a motion for instructed verdict as a challenge to the legal sufficiency of the evidence, we review these issues together. *See Williams v. State*,

---

[4]   Appellant testified that Deltz would cater political functions for Moody Bank but charge it as a board meeting because banks cannot give to political candidates. She also testified that Deltz sexually harassed her and other female employees for years.

937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)).

### *Standard of Review and Applicable Law*

In reviewing the legal sufficiency of the evidence to support a criminal conviction, a court of appeals determines whether, after viewing the evidence in the light most favorable to the verdict, the trier of fact was rationally justified in finding the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326. On appeal, we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Juries

are permitted to make reasonable inferences from circumstantial evidence presented at trial. *Id.*

For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of theft if that person unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE § 31.03(a). As charged in this case at the time of the offense, theft was a first-degree felony if the property unlawfully appropriated was valued at $200,000.00 or more. *Id.* § 31.03(a), (e)(7) (since amended to raise limit to $300,000). Aggregation of multiple thefts committed pursuant to one scheme or continuing course of conduct under section 31.09 of the penal code creates a single offense for purposes of jurisdiction, punishment, and the statute of limitations. TEX. PENAL CODE § 31.09; *Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990); *Anderson v. State*, 322 S.W.3d 401, 408 (Tex. App.—Houston [14th] Dist. 2010, pet. ref'd).

*Analysis*

Appellant contends that, because Deltz testified that "he did financially help his employees with loans," the State was required to "irrefutably show" that all the amounts taken by appellant were not gifts or loans. However, it is not the State's burden to disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Cantu*, 395 S.W.3d at 207–08. Rather, the State needs to prove that the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13.

Here, Deltz testified that, while he occasionally loaned appellant money, she paid him back. He further testified that he never gave her permission to pay her personal credit card debt out of Benno Enterprises' account. While appellant testified that she never used Benno Enterprises' account to pay her own bills without Deltz's consent, the jury, as factfinder, was entitled to believe Deltz and to disbelieve appellant. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986) ("The jury may believe some witnesses and refuse to believe others[.]").

We overrule issues one and two.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 37.2(b).