

## NUMBER 13-12-00346-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ALBERT ZUNIGA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 28th District Court of
### Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

By two issues, appellant, Albert Zuniga, challenges the sufficiency of the evidence

related to his convictions for (1) aggravated assault with a deadly weapon, *see* TEX.

PENAL CODE ANN. § 22.02(a)–(b)(1) (West 2011), a second-degree felony enhanced to a

first-degree felony, *see id.* § 12.42(b) (West 2011); and (2) unlawful restraint, *see id.* § 20.02(a), (c)(2) (West 2011), a third-degree felony enhanced to a second-degree felony.[1] *See id.* § 12.42(a).   We affirm.

## I.  BACKGROUND

The following evidence was presented at Zuniga's jury trial.   On August 12, 2011, Corpus Christi police officer Timothy Frazier responded to a call on the 4400 block of Ramona Street in Corpus Christi.   Upon his arrival, Officer Frazier made contact with Corpus Christi firefighters who were trying to enter a small, one-bedroom apartment where they heard a female voice screaming "frantic[ally]" that she was being stabbed. Officer Frazier assisted the firefighters by attempting to kick down the apartment's front door, but was met with resistance from an item blocking the other side of the door. Officer Frazier and the firefighters eventually broke in the door, and Officer Frazier made contact with Zuniga, who pushed the door back toward the officer to prevent entry. Officer Frazier eventually pushed back on the door and caused Zuniga to fall onto a bed that was located inside of the apartment.   Officer Frazier then drew his weapon and held Zuniga at gunpoint.

A second officer, Horacio Solis, arrived at the scene a short time later to provide Officer Frazier with backup assistance.   Officer Solis entered the apartment first, after jumping over a dresser that blocked the door, and placed Zuniga under arrest.   A search of Zuniga's person revealed two cellular phones and a knife.   Officer Frazier

---

[1] The jury acquitted Zuniga of a third charge of felony family violence assault.   *See* TEX. PENAL CODE ANN. § 22.01(b) (West 2011).

2

then entered the apartment and discovered Sandra Sanchez[2] unclothed and wrapped in a blanket in the far corner of the room. Officer Frazier observed clothes in the apartment that appeared to be "either cut or ripped." According to Officer Frazier, Sanchez told her that she was assaulted by Zuniga and did not know if she had been cut, but knew that Zuniga had a knife in his hand. Officer Frazier also testified that Sanchez had a bruise on her shin, which she explained came from hitting something as she ran away from Zuniga. Officer Solis also testified that blood was present at the scene. According to Officer Solis, Zuniga had lacerations on his fingers and was bleeding.

Corpus Christi police detective Larry Young investigated the case and testified at trial. According to Detective Young, Sanchez told him that she was cut by a knife that night. Detective Young also testified that the knife found on Zuniga's person is "absolutely" capable of causing serious injury. Detective Young confirmed that blood samples were taken at the scene, but he did not know why the samples were not sent off for further lab testing.

Sanchez also testified. According to Sanchez, she and Zuniga went out on the night of August 12, 2011 to have a few drinks and returned home. Sanchez testified that Zuniga did not live with her and her two children, Son and Daughter,[3] but he would occasionally spend the night. Sanchez testified that after returning home from their night out, Zuniga left with Son to go to the store. Sanchez testified that Son eventually

---

[2] We note that the State's brief incorrectly refers to Sandra Sanchez as "Sandra Saenz."

[3] We will use aliases for the children in order to protect their identities.

3

returned home without Zuniga. Son told Sanchez that Zuniga had told him to go home alone.

Zuniga then returned a short while later and went straight to the apartment's bathroom. Sanchez testified that because Zuniga was in the bathroom "for a while," she thought he was using drugs, so she knocked on the door and entered the bathroom. Once inside the bathroom, Sanchez reached into his pockets, pulled "something" out, and threw it outside. When Sanchez entered the house, Zuniga ran in front of her, shut the door, and locked her inside. Sanchez testified that Son was outside of the house at the time, leaving only her and Zuniga inside of the apartment. According to Sanchez, Zuniga then pulled out a knife and proceeded to cut her clothes off with the knife. Sanchez described what happened next by the following testimony:

> I just remembered . . . running back and forth in my room, and then, next thing we're just struggling over the knife. He had the knife and I—in his hand and we were just struggling like that with the knife.

The record also shows that Sanchez demonstrated for the jury the method in which Zuniga cut off her clothes. Sanchez testified that she was running around the apartment because she "didn't want him to cut [her]." Sanchez told the jury that she told Son to call the neighbors and call the police because she was afraid that Zuniga was going to hurt her. When police knocked on the door, Zuniga moved the dresser to block the door. Sanchez later told police that Zuniga had hit and cut her.

Finally, Zuniga testified in his defense. Zuniga corroborated Sanchez's story up until the part where he and Son went to the store. According to Zuniga, Son left for home from the store without telling him. When Zuniga realized that Son had left, he

4

returned to the apartment to find Sanchez upset at him for letting Son walk home alone. Zuniga testified that there was no fight between him and Sanchez, but people were "banging on the door" and he did not know who it was, so he took out a knife. Zuniga admitted to cutting off Sanchez's clothes because he "noticed like a hickey on her neck" and became angry because he thought that she was "cheating" on him. Zuniga explained that he cut off Sanchez's clothes because he figured that there were more "hickeys" underneath her clothing. Zuniga testified that he lacerated his finger in the process of cutting off Sanchez's clothing because he had the knife blade "resting on the fixer" and with the pressure he put on the knife, it cut his finger. On cross-examination by the State, Zuniga admitted to moving the dresser to block the door because he "heard more than one person talking," but he denied knowing that it was the police knocking on the door. Finally, in addition to live testimony, numerous photographs of Sanchez and the blood-stained apartment were also admitted into evidence, as well as the 9-1-1 tape recordings related to the incident.

The jury returned guilty verdicts for one count of aggravated assault with a deadly weapon and one count of third-degree felony unlawful restraint. The jury assessed punishment for the aggravated assault with a deadly weapon charge at twenty years' imprisonment with the Texas Department of Criminal Justice—Institutional Division (TDCJ-ID) and fifteen years' imprisonment with TDCJ-ID for the unlawful restraint conviction. The sentences were ordered to run concurrently. This appeal followed.

## II.  SUFFICIENCY CHALLENGES

By two issues, Zuniga asserts that the evidence was insufficient to sustain his

convictions for aggravated assault with a deadly weapon and unlawful restraint.

## A. Standard of Review

The standard for determining whether the evidence is legally sufficient to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State,* 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in original); *see Brooks v. State,* 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State,* 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State,* 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

**B. Discussion**

**1. Aggravated Assault with a Deadly Weapon**

Under a hypothetically correct jury charge, Zuniga is guilty of aggravated assault with a deadly weapon if the evidence shows that he intentionally, knowingly, or recklessly caused bodily injury to Sanchez and used or exhibited a deadly weapon during the commission of the crime. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02.

Zuniga argues that the evidence is insufficient to prove that: (1) Zuniga used or exhibited the pocketknife as a deadly weapon and (2) Zuniga cut Sanchez with the knife. We disagree with both assertions.

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See id.* § 1.07(17)(B) (West 2011). Applying this definition, the State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is *capable* of causing death or serious bodily injury." *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (emphasis in original). Even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used. *Id.* at 691–92. A jury may consider several factors when considering whether an object is a deadly weapon, including (1) the words of the accused; (2) the intended use of the weapon; (3) the size and shape of the weapon; (4) testimony by the victim that he feared death or serious bodily injury; (5) the severity of any wounds inflicted; (6) the manner in which the assailant allegedly used the object; (7) physical proximity of the parties; and (8) testimony as to the weapon's

7

potential for causing death or serious bodily injury. *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

The evidence shows that Sanchez and Zuniga got into a fight on August 12, 2011. At some point during the fight, Zuniga brandished a knife with a serrated blade and used it to cut off Zuniga's clothing. Photos of the knife were admitted into evidence for the jury to inspect. Detective Young also testified that the type of knife used by Zuniga was "absolutely" capable of causing serious bodily injury. Sanchez testified that she was running around the apartment because she did not want Zuniga to cut her with the knife. Sanchez also demonstrated for the jury the cutting motion that Zuniga employed when he cut off her clothing. Based on this evidence, the jury could have reasonably found that Zuniga's knife was used as a deadly weapon. *See id.*

Likewise, the jury could have reasonably found that Zuniga cut Sanchez with the knife. Sanchez testified that she did not know exactly when she was cut because she was struggling with Zuniga, but she stated that she was cut sometime during the struggle. Any inconsistencies in Sanchez's testimony are resolved in favor of the verdict. *See Curry*, 30 S.W.3d at 406. Furthermore, the trial court admitted photos of Sanchez's cuts for the jury to review, and detective Young testified that Sanchez told him during his investigation that Zuniga had cut her.

Therefore, after viewing this evidence in the light most favorable to the prosecution, we conclude that any rational jury could have found that Zuniga committed the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt. *See Johnson,* 364 S.W.3d at 293–94. We overrule Zuniga's first issue.

8

## 2. Unlawful Restraint

Under a hypothetically correct jury charge, Zuniga is guilty of third-degree felony[4] unlawful restraint if he intentionally or knowingly restrained Sanchez and recklessly exposed Sanchez to a substantial risk of serious bodily injury. *See* TEX. PENAL CODE ANN. § 20.02(a), (c)(2). As applied to this case, "restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id.* § 20.01(1)(A). Restraint is "without consent" if it is accomplished by force, intimidation, or deception. *Id.*

Zuniga argues that the evidence is insufficient to prove that Sanchez was unlawfully restrained. We disagree.

Sanchez testified that Zuniga prevented her from leaving the apartment and instead ran in between her and the door, closed the door, and locked it. Sanchez further testified that at that point, Zuniga pulled out his knife, began cutting off her clothes, and a struggle ensued. Zuniga testified that he never tried to keep Sanchez from leaving the apartment. Zuniga instead testified that he blocked the door because he heard unidentified people talking outside and was "just trying to keep them out." While these differing testimonies create a conflict in evidence, reconciliation of those conflicts is within the exclusive province of the jury and will not be disturbed on appeal, so long as there is enough credible evidence to support the conviction. *See Wyatt*, 23 S.W.3d at 30 ("The jury may choose to believe some testimony and disbelieve other testimony."). We

---

[4] As noted previously in this opinion, this charge was enhanced to a second-degree felony under section 12.42(a) of the penal code. *See* TEX. PENAL CODE ANN. § 12.42(a).

9

conclude that any rational jury could have found that Zuniga unlawfully restrained Sanchez beyond a reasonable doubt.

In the alternative, Zuniga argues that even if the finding of misdemeanor unlawful restraint is supported by the evidence, the evidence is insufficient as to whether he recklessly exposed Sanchez to a substantial risk of serious bodily injury to make the charge a third-degree felony. In support of this argument, Zuniga cites to *Cook v. State*, Nos. 03-08-00718-CR, 03-08-00719-CR, 2009 WL 3230790, at *8 (Tex. App.—Austin Oct. 9, 2009, pet. ref'd) (mem. op.) (not designated for publication).

In *Cook*, the Austin appeals court held that the evidence was legally insufficient to support the defendant's conviction for third-degree felony unlawful restraint because the complainant did not testify as to any specific circumstances surrounding Cook's conduct or any result of Cook's conduct that exposed her to a substantial risk of serious bodily injury. *Id.* at *8.

We find *Cook* distinguishable from this case. A person acts recklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(c) (West 2011). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* Here, unlike in *Cook*, Sanchez testified about how she was afraid that Zuniga was going to cut her with his knife and ran around the apartment to try to get away from him. Zuniga and Sanchez

10

both testified that Zuniga used the knife to cut open her clothing. Furthermore, Sanchez testified about how she struggled with Zuniga, who was holding the knife, and that she ultimately ended up getting cut on her arm. Based on this evidence, a reasonable jury could have found that Zuniga recklessly exposed Sanchez to a substantial risk of serious bodily injury.

Therefore, after viewing the evidence in the light most favorable to the prosecution, we conclude that any rational jury could have found that Zuniga committed the essential elements of third-degree felony unlawful restraint beyond a reasonable doubt. We overrule Zuniga's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
13th day of February, 2014.

11