**Affirmed and Memorandum Opinion filed November 9, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00382-CR

---

**LESLIE GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 18-DCR-085220A**

---

## MEMORANDUM OPINION

A jury found appellant Leslie Garcia guilty of the second-degree felonies of theft of property greater than or equal to $150,000.00 but less than $300,000.00 and misapplication of fiduciary property. After appellant pleaded true to an enhancement paragraph due to a prior second-degree-felony theft conviction, the jury assessed her punishment at thirty years' confinement for theft, thirty-five years' confinement for misapplication of fiduciary property, and a $10,000.00 fine for each crime. In one issue, appellant argues that there was insufficient evidence

to support her conviction for theft and for misapplication of fiduciary property. We affirm.

## I. Background

Appellant was employed by Houston Ready Mix ("HRM"), a concrete business owned by four partners, starting in 2015 as an administrative assistant handling accounts receivable and dealing with drivers and moving to accounts payable in October or November of 2016. In accounts payable, she was the sole person responsible for paying vendors, a process that entailed receiving invoices by mail and e-mail, gathering together the invoices once a week, and setting up checks for payment. Appellant would fill out the checks, and then take the checks to a specific partner at HRM for signature. Appellant then mailed the payments to the various payees.

Hasten Energy Solutions ("Hasten") was one of HRM's frequent vendors. About three and half years into appellant's employment, HRM's partners discovered a duplicate payment had been made payable to Hasten. The two payments by check to Hasten had cleared HRM's bank account on the same day, but the checks had been deposited into separate accounts at two different banks. When HRM contacted Hasten about the duplicate payment, Hasten confirmed that it banked at only one of the banks. The check deposited in Hasten's bank account bore the signature of HRM's partner. The other check had been deposited at IBC Bank, and when HRM retrieved a copy of the cleared check, the partner confirmed that his signature had been forged.

The HRM partners searched their bank records and found twenty-five checks payable to Hasten Energy Solutions that had been deposited in IBC Bank. A fraud examiner for the Fort Bend County District Attorney's Office found four additional checks. These twenty-nine checks, all made payable to Hasten but

2

deposited in the IBC Bank account, totaled $288,846.92, an amount HRM never recovered.

After HRM found the duplicate checks, a partner searched for "Hasten" in various counties' assumed names records.[1] When he searched using appellant's name, he found an assumed name record filed in Fort Bend County for "Lasten Energy Solutions." It had been file-stamped by the Fort Bend County Clerk's office on December 12, 2016, at 11:52 a.m. The record showed that "Leslie Mendez" had signed it in the presence of a deputy clerk. The deputy clerk, who testified at trial, had further notated appellant's full name, "Leslie Garcia Mendez," on the record as it appeared on appellant's government-issued identification. After the deputy-clerk file-stamped the record, she gave a copy of it to appellant.

Just forty-nine minutes later, an IBC Bank account was opened for Leslie G. Mendez d/b/a Hasten Energy Solutions. The IBC Bank account number matches the account into which the falsified checks from HRM were deposited.

When IBC Bank opens an account, the banker takes a picture of the customer using a small web camera to assist bankers and tellers to verify the person making future transactions. Thus, IBC Bank's records for the newly-opened business checking account include a photograph of appellant in the lobby, revealing the bank's December holiday décor in the background. Additionally, the banker who opened the account for appellant testified that IBC Bank will not open a business checking account for a D/B/A unless the customer provides an assumed name record. The bank's records include a copy of the assumed name certificate that appellant had just recorded in Fort Bend County, except that the "L" in

---

[1] If a person uses an assumed name to conduct business, commonly called a "D/B/A" ("doing business as"), then that person must file an assumed name certificate in each county in which the person conducts business. *See* Tex. Bus. & Comm. Code Ann. §§ 71.051, 71.054.

"Lasten" had been altered to an "H" so that the business name appeared to be "Hasten Energy Solutions." According to the banker, appellant also presented her Texas driver's license so that he could type its number into the depositor's agreement. IBC Bank's records for the account include an acknowledgement, which appellant signed, for issuance of an ATM/debit card for Hasten Energy Solutions. When opening the account, appellant specified that only she had authority to access the account. In addition, IBC Bank's records show the initial deposits made in the account in December 2016. A deposit on December 14, 2016, was for $9,710.35, which is the exact amount of the earliest forged check payable to Hasten Energy Solutions discovered by HRM. The account shows that Appellant withdrew $8,000.00 in cash on December 30, 2016.

Over the twenty months that appellant deposited checks from HRM into the IBC Bank account, she withdrew approximately $142,053.00 in cash and used the debit card for restaurants, clothing, and on-line purchases. When the HRM partners confronted appellant on September 4, 2018, and asked where the money was, she simply replied, "Gone." When asked, "Gone where?" she replied, "Spent." One of the partners received a text message on the same day from appellant, which read "Sebu [sic] I'm really sorry but I have been to prison before and with the charges filed I'll probably be looking at 20 to 25 years so there's no way I'd be able to pay all back if I go to prison." HRM's partners testified that appellant did not have authority to channel money into an account she controlled and that none of HRM's money channeled to the IBC Bank account was authorized.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.

4

Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theory of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Chambers v. State*, 580 S.W.3d 149, 156 (Tex. Crim. App. 2019); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our analysis, we defer to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record contains conflicting inferences, we presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 326).

## B. THEFT

The grand jury's indictment of appellant for theft states:

> on or about and between December 1, 2016, and September 30, 2018, [appellant] did, unlawfully, pursuant to one scheme and continuing course of conduct, appropriate property, namely, money of the aggregate value of $150,000 or more but less than $300,000, from Houston Ready Mix, hereinafter referred to as the owner, without the effective consent of the owner and with the intent to deprive the owner of the property.

A person commits theft if she "unlawfully appropriates property with intent to

deprive the owner of property." Tex. Penal Code Ann. § 31.03(a).[2] Here, a hypothetically correct jury charge would instruct the jury that appellant is guilty of the offense if she unlawfully appropriated money from Houston Ready Mix in an amount of $150,000.00 or more but less than $300,000.00 with the intent to deprive Houston Ready Mix of the money. *See id.*; *Villarreal*, 286 S.W.3d at 327.

Appellant argues in particular that there is insufficient evidence that (1) she was the person who committed theft and (2) she intended to commit theft.[3] The State responds that although the evidence proving her identity and intent were largely circumstantial, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone may be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

At trial, appellant tried to show that other persons—her co-workers, a partner of HRM or his wife, her employer's certified public accountant, and even her boyfriend—had the opportunity to take HRM's money or set up the IBC Bank

---

[2] The statute seems straightforward, but "simplicity of the statutory elements of theft hides the complexity of the overall scheme." *Geick v. State*, 349 S.W.3d 542, 546 (Tex. Crim. App. 2011). In the subparts of § 31.03 and definitions in § 31.03, there are three ways in which appropriation can be unlawful, two ways to appropriate, three types of property, and three ways to deprive. *See id.*

[3] As relevant to this appeal, appropriate means "to acquire or otherwise exercise control over property other than real property," Tex. Penal Code Ann. § 31.01(4)(B); appropriation is unlawful if "it is without the owner's effective consent," *id.* § 31.03(b)(1); "[c]onsent is not effective if . . . induced by deception or coercion," *id.* § 31.01(3)(A); deception means "preventing another from acquiring information likely to affect his judgment in the transaction," *id.* § 31.01(1)(C); and deprive means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner" or "to dispose of property in a manner that makes recovery of the property by the owner unlikely." *Id.* § 31.01(2)(A),(C). However, Appellant does not contend that there is insufficient evidence of unlawful appropriation, instead focusing on identity and intent. Our review is therefore limited to the issues she has raised on appeal. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record.").

checking account. The jury, however, may have simply chosen to disbelieve the testimony she presented. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Appellant also argues that there is no photograph of her presenting a check at IBC Bank or withdrawing money from the account at an ATM, nor a witness who saw her receiving or spending HRM's money. However, appellant's identity was well-established through witness testimony and documentary evidence admitted at trial, including appellant's use of her driver's license to obtain both the assumed name record and the business checking account at IBC Bank. Both the deputy clerk who filed the assumed name record in the Fort Bend County Clerk's Office and the banker who opened the IBC Bank account for appellant testified that they required presentment of a government-issued identification, and both notated appellant's driver's license number on their respective records. The evidence further included the photograph taken of appellant in the IBC Bank lobby by the banker in conjunction with her opening of the business checking account at that location. Appellant's name, date of birth, address, telephone number, driver's license number, and Social Security Number appear consistently throughout the IBC Bank records, the assumed name record, and her employment file.

Appellant's position in HRM's accounts payable and access to the HRM's checkbook started only a month or two before she filed the assumed name record and opened the IBC Bank account for "Leslie G. Mendez d/b/a/ Hasten Energy Solutions." She alone had access to the IBC Bank checking account and had the sole signature authority on the account. Her former employer testified that the falsified checks from HRM had been deposited only in this IBC Bank checking account, and a fraud examiner with the Fort Bend County District Attorney's Office confirmed the same. Substantiating her identity as the thief, appellant texted an apology to a partner of her former employer on September 4, 2018, after two

7

partners confronted her, stating "Sebu [sic] I'm really sorry but I have been to prison before and with the charges filed I'll probably be looking at 20 to 25 years so there's no way I'd be able to pay all back if I go to prison." A reasonable finder of fact could have inferred and found from this evidence that appellant committed the theft; thus, we conclude there is legally sufficient evidence of identity.

As to her intent to commit theft, the evidence of appellant's actions and transactions over a twenty-month period constitute legally sufficient evidence of intent. Appellant admitted in her testimony that she had filed the assumed name record for Lasten Energy Solutions in the Fort Bend County Clerk's office. Appellant chose a business assumed name that varied by only one letter from the name of her employer's frequent vendor. She printed the "L" in "Lasten" carefully onto the assumed name form to blend the letter's horizontal line just atop the form's pre-printed blank line. This was done to assist her in less-noticeably altering the "L" to an "H" on the record after its filing. Although she denied opening the IBC Bank account, the documentary evidence showed that within forty-nine minutes of filing the D/B/A at the Fort Bend County Clerk's Office, she used the altered record to open a business checking account for "Hasten Energy Solutions" at IBC Bank, where she presented her driver's license and was photographed.

Although appellant denied depositing checks in the account, of the $288,846.92 of HRM's money deposited in the IBC Bank account, appellant withdrew more than $142,053.00 in cash. Many of the withdrawal slips for cash transactions were admitted into evidence, and they bear her signature and a hand-written notation of her driver's license number. The evidence also shows the debit card for the account was used for personal purchases at stores, gas stations, restaurants, and even a transfer via Square (a mobile telephone money transfer application) to appellant's daughter, Denise Garcia. In her testimony, appellant

8

claimed to own a T-shirt printing business, and the IBC Bank records reveal $4,501.56 in payments to "Heat Press Nation." When IBC Bank finally froze the checking account on September 5, 2019, just $5,000.00 remained in it. And when one of the partners for HRM asked appellant during his confrontation with her where the money was, appellant replied, "Gone." A reasonable finder of fact could have inferred from this evidence that appellant intended to deprive HRM of its money; thus, we conclude there is legally sufficient evidence of intent.

Because there is legally sufficient evidence of appellant's identity and intent, we overrule appellant's first issue as to her conviction for theft.

## C. MISAPPLICATION OF FIDUCIARY PROPERTY

Appellant next argues that there is legally insufficient evidence to support her conviction for misapplication of fiduciary property. Specifically, she argues that the evidence was insufficient to establish (1) a fiduciary relationship between HRM and herself; (2) the existence of an agreement under which she held property but misapplied the property; (3) the required mental state; (4) a risk of loss; and (5) that she misapplied money in an aggregate value of $150,000.00 or more but less than $300,000.00.

> The indictment for misapplication of fiduciary property reads:
>
> on or about and between December 1, 2016 and September 30, 2018, pursuant to one scheme and continuing course of conduct, [Defendant] did, unlawfully, intentionally and knowingly misapply property the Defendant held as a fiduciary, namely, money of the aggregate value of $150,000 or more but less than $300,000, by dealing with the property contrary to an agreement under which the Defendant held the property as a fiduciary, in a manner that involved a substantial risk of loss to Houston Ready Mix, the owner of the property.

A person commits second-degree felony misapplication of fiduciary property, in

relevant part, if he intentionally or knowingly misapplies property that he holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property, and the value of the property misapplied is $150,000.00 or more but less than $300,000.00. Tex. Penal Code Ann. § 32.45(b), (c)(6). "Misapply" means deal with property contrary to: "(A) an agreement under which the fiduciary holds the property; or (B) a law prescribing the custody or disposition of the property." *Id.* § 32.45(a)(2). "[I]f the State relies on a breach of an agreement, the evidence must show that the defendant was a fiduciary with knowledge of the agreement so as to be guilty of misapplication of fiduciary property in an amount exceeding the statutory limit at the time the transactions were made." *Amaya v. State*, 733 S.W.2d 168, 171, 173 (Tex. Crim. App. 1986).

## 1. Appellant was a Fiduciary

Under the penal code, a fiduciary includes "(C) any other person acting in a fiduciary capacity . . . or (D) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary." Tex. Penal Code Ann. § 32.45(a)(1)(C),(D). "[O]ne acts in a 'fiduciary capacity' for purposes of the misapplication statute if his relationship with another is based not only on trust, confidence, good faith, and utmost fair dealing, but also on a justifiable expectation that he will place the interests of the other party before his own." *Berry v. State*, 424 S.W.3d 579, 585 (Tex. Crim. App. 2014); *see also Coplin v. State*, 585 S.W.2d 734, 735 (Tex. Crim. App. 1979) ("We hold that 'any other person acting in a fiduciary capacity' embraces any fiduciary, including a joint adventurer or partner, not enumerated in § 32.45(a)(1)(A)."). Under subsection (C), the plain meaning of "fiduciary capacity" encompasses "only special relationships of confidence or trust in which one party is obligated to act primarily for the benefit of the other." *Berry*, 424 S.W.3d at 580. Misapplication of fiduciary property may arise from an

10

employment-based fiduciary relationship. *See Starnes v. State*, 929 S.W.2d 135, 137 (Tex. App.—Fort Worth 1996, no pet.); *see, e.g.*, *Ruiloba v. State*, No. 08-17-00123-CR, 2019 WL 6001565, at * 1 (Tex. App.—El Paso Nov. 14, 2019, pet. ref'd) (not designated for publication).

Appellant argues that her former employer's subjective trust in her did not transform an ordinary business relationship into a fiduciary one. However, there is evidence beyond subjective trust that reflects appellant acted in a fiduciary capacity in her employment at HRM. As the sole employee in charge of accounts payable, appellant gathered invoices from vendors and was thus privy to HRM's monthly financial obligations. She had access to HRM's bank checking account and had authority to and was responsible for filling out the payees' names and the amount of the payments, and then presenting the checks to one of HRM's partners for authorized signature. After a check was signed, she was then entrusted to mail the check to the payees. In these duties, she was obligated to act for HRM's benefit, not her own. Further, she was the only employee who had access to the business's QuickBooks, a software program for financial management. Other than appellant, only two of the four partners and a third-party certified public accountant had access to QuickBooks. It was the expectation of the partner who signed checks for HRM that appellant would accurately enter checks into QuickBooks, which HRM then used to reconcile its bank statements. HRM and its partners had a justifiable expectation that in her role in charge of accounts payable appellant would accurately convey payments to the vendors in the amounts charged to the company and not into personal accounts. Finally, two HRM partners testified that appellant held a fiduciary role at HRM. There is thus evidence that appellant's relationship with HRM was based on trust, confidence, good faith, and utmost fair dealing and that HRM had a justifiable expectation appellant would

place HRM's interests before her own. *See* Tex. Penal Code Ann. § 32.45(a)(1)(C), (b). We conclude that there is legally sufficient evidence that appellant was a fiduciary of HRM's money in her employment capacity as accounts payable with HRM. *See id.*

Appellant's misuse of her employment role is analogous to other cases in which appellate courts have affirmed convictions of fiduciaries under the misapplication statute. *See, e.g.*, *Bynum v. State*, 767 S.W.2d 769, 771 (Tex. Crim. App. 1989) (group member cashed ten checks payable to citizen's group instead of transferring them to the group's treasurer); *Merryman v. State*, 391 S.W.3d 261, 269 (Tex. App.—San Antonio 2012, pet. ref'd) (general contractor accepted payments in advance but then quit projects before completion and partly used money for personal expenses); *Gonzalez v. State*, 954 S.W.2d 98, 104 (Tex. App.—San Antonio 1997, no pet.) (store clerk was responsible for selling inventory and tendering proceeds into the cash till); *Starnes*, 929 S.W.2d at 137 (fire department employee was responsible for collecting bingo money and depositing the cash in the department's account); *see also*, *e.g.*, *Ruiloba*, 2019 WL 6001565, at * 1 (title clerk was responsible for paying employer/dealership's taxes and fees arising from newly-sold motorcycles but instead diverted checks to a personal account). As in these cases, there is legally sufficient evidence that appellant's employment duties placed her in a fiduciary capacity.

## 2. Other Elements

Appellant next contends that there is no evidence of an agreement between HRM and her. The misapplication of fiduciary property statute does not define the term "agreement." *See* Tex. Penal Code Ann. §§ 32.01, 32.45; *Bynum*, 767 S.W.2d at 777 ("As previously noted, the Legislature did not define 'agreement' within § 32.45."). The courts have consequently interpreted that term under its common

definition. *Bynum*, 767 S.W.2d at 777. Nothing in the statute requires the agreement to be in writing. *See Gonzalez v. State*, 954 S.W.2d 98, 104 (Tex. App.—San Antonio 1997, no pet.). There must merely be a harmonious understanding or an arrangement, between two or more parties, as to a course of action. *See Anderson v. State*, 322 S.W.3d 401, 406 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Viewing the evidence in this light, we conclude the evidence is sufficient to show appellant and HRM had a harmonious understanding or arrangement regarding her handling of HRM's money as a fiduciary. The evidence showed that appellant was first hired by HRM in accounts receivable, but then became its sole employee in accounts payable. Her duties entailed gathering vendor invoices, preparing payments by check, obtaining authorized signature on those checks, mailing the payments, and entering the data into QuickBooks, which was used to reconcile bank statements and enable accounting. Two partners testified that appellant had an agreement as part of her employment to pay vendors, including Hasten, but not to channel money to her own account. She was required to use HRM's money and assets only for business purposes and for HRM's benefit. *See Gonzalez*, 954 S.W.2d at 104.

Finally, there is legally sufficient evidence of risk of loss, misapplication of property held as a fiduciary with a value greater than $150,000.00 but less than $300,000.00, and that appellant misapplied HRM's money intentionally or knowingly. As the State argues in its brief, appellant knew the parameters of her agreement with HRM as shown by the methods she used to circumvent the agreement. She filed an assumed name record using a business name nearly identical to one of HRM's biggest vendors; altered that record to duplicate Hasten's name; opened a business checking account with the altered record at IBC

Bank; wrote illegitimate checks from HRM, which she either forged or passed off to an unsuspecting partner for signature; and deposited twenty-nine such checks totaling $288,846.92 into the IBC Bank account set up by her. She alone knew of the existence of the IBC Bank account for "Leslie G. Mendez d/b/a Hasten Energy Solutions" and she alone had access to it, which placed HRM at risk of loss when she deposited her employer's money into the account. Moreover, the risk of loss was realized because appellant spent all but approximately $5,000.00 of the $288,846.92 she diverted to IBC Bank for her personal use, including over $142,053.00 in cash withdrawals. HRM never recovered its money from her. Appellant had already spent it on her day-to-day living expenses at restaurants, gas stations, and shopping, and she acknowledged when confronted that the money was "gone." We conclude this is legally sufficient evidence of the risk of loss, value of the property, and culpable mental state elements of the offense. *See Anderson v. State*, 322 S.W.3d at 407. We overrule appellant's first issue as to legal sufficiency of the evidence of misapplication of fiduciary property.

Having overruled appellant's sole issue as to her convictions for both theft and misapplication of fiduciary property, we affirm the trial court's judgment.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.
Do Not Publish — TEX. R. APP. P. 47.2(b).

14